THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARYLAND *v.* MAURICE C. PINCOFFS, JR.

[No. 173, September Term, 1974.]

*Decided November 19, 1974.*

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*Robert B. Barnhouse*, with whom were *Edward S. Diggs, Jr., J. William Sarver, Warner F. Brundage, Jr.*, and *Piper & Marbury* on the brief, for appellant.

*Maurice C. Pincoffs, Jr.*, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 25 February 1974 Maurice C. Pincoffs, Jr. (Pincoffs) filed in the Superior Court of Baltimore City a "PETITION FOR DECLARATORY JUDGMENT TO DECLARE TARIFF NULL AND VOID AND FOR INJUNCTION ANCILLARY TO RELIEF AT LAW", naming as defendants the Chesapeake & Potomac Telephone Company of Maryland (Telephone Company) and the members of the Public Service Commission of the State of Maryland (the Commission). The "Statement of the Facts" contained in the Telephone Company's brief summarized the allegations of the Petition and gave the subsequent history of the matter. The "Statement", with the exception of one sentence, was accepted by Pincoffs, and we quote it, deleting the excepted sentence: "The Petition for Declaratory Judgment states that Pincoffs, a subscriber to service of the Telephone Company at his law office, purchased in July, 1973, a foreign-manufactured apparatus which he had electrically connected to the Telephone Company's system for the purpose of automatically answering his telephone and

recording messages left by the caller. This apparatus has the further capability of recording two-way conversations on the telephone line and of serving as an office dictating machine. At the time the apparatus was purchased and electrically connected to the Telephone Company's network, there existed Tariff No. 205 filed with the Maryland Public Service Commission. This tariff prohibits the direct electrical connection to the telephone network of a customer-provided telephone answering apparatus without the interposition between it and the telephone lines of an 'interface' or 'recorder coupler' provided by the Telephone Company, for which the tariff requires an installation charge and a monthly rental charge . . . . In addition, if telephone conversations are to be recorded, a 'recorder connector' must also be attached in order to emit the required 'beep' tone. In early February 1974, the Telephone Company contacted Pincoffs about his delinquent telephone bill and learned that he had a recording apparatus electrically connected to the telephone network. When advised that it would be necessary for the Telephone Company to install the required recorder coupler, Pincoffs refused to have the unit installed. The Telephone Company, in compliance with the tariff, then sent a written request to Pincoffs that he remove his telephone answering and recording apparatus from the lines and that he advise the Telephone Company within ten days that this had been accomplished. Pincoffs did not comply with the tariff nor did he file a complaint with the Maryland Public Service Commission; rather, he filed the Petition for Declaratory Judgment and obtained an *ex parte* injunction. That injunction prohibited the Telephone Company from enforcing the tariff requirement that either the apparatus be disconnected or the service be terminated. The later injunction *pendente lite*, from which this appeal is taken, contained substantially the same provisions." Attached to the Petition as exhibits were the Telephone Company's Tariff No. 205 as revised and effective in accordance with Order No. 60472 of the Commission dated 19 October 1973, a copy of that Order, and the letter of 8 February 1974 from the Telephone Company's Manager — Community Relations to Pincoffs requesting the removal of the answering device.

On 5 March 1974 the Telephone Company filed a Motion Raising Preliminary Objections on the ground that the court lacked jurisdiction over the subject matter and that Pincoffs had not pursued his available administrative remedies; on 12 March the motion was "overruled". Petition for interlocutory injunction *pendente lite* was filed on 7 March and granted the same day. This appeal, noted 28 March, is from the order granting the interlocutory injunction *pendente lite*.[1]

The interlocutory injunction prohibited the Telephone Company during the pendency of the litigation from terminating, suspending or discontinuing the telephone service of Pincoffs for non-compliance with Tariff No. 205, from removing or disconnecting the answering machine, or requiring Pincoffs to remove it and from enforcing or attempting to enforce upon Pincoffs the provisions of the tariff in any other way. The order provided that, in accord with Maryland Rule BB75 b 1, Pincoffs need not furnish the injunction bond required by Rule BB75 a.

The Telephone Company and Pincoffs agree that the merits of the matter presented by the petition for a declaratory judgment are not involved in this appeal. The question is whether the court below had jurisdiction to grant the injunction.

I

The jurisdiction and powers of the Public Service Commission extend to the Telephone Company. Code, Art. 78, §§ 1, 2 (o), 2 (z), 23. See Code, Art. 23, subtitle *Telegraph and Telephone Companies*, §§ 317-327. "The Commission shall have the power to make such reasonable rules and

---

1. On 27 March 1974 the Telephone Company demurred to the Petition for Declaratory Judgment. On 8 April Pincoffs filed in the lower court (1) a motion to dismiss the appeal, (2) a motion to strike the demurrer, and (3) a partial answer to the demurrer and a memorandum of points and authorities. The motion to dismiss the appeal was also filed in the Court of Special Appeals of Maryland. It claimed that the appeal was premature because the Telephone Company had not filed an answer to the Petition for Declaratory Judgment. We denied the motion by our order of 26 April. See Courts Art. § 12-303; *Stockham v. Knollenberg*, 133 Md. 337.

regulations as it deems necessary to carry out the provisions of this article and any other law relating to the Commission." Code, Art. 78, § 64. See *Public Service Commission of Maryland v. Hahn Transportation, Inc., et al.,* 253 Md. 571.[2] It is the Telephone Company, however, as a public service company, which has the affirmative duty to charge just and reasonable rates for the utility services rendered by it, Code, Art. 78, § 28 (d) and to file with the Commission a tariff schedule of its rates and charges, § 28 (a). Section 28 (a) further provides: "Copies of such schedules shall be plainly printed, shall be open to public inspection, and shall be posted in such manner as to be readily accessible to and conveniently inspected by the public, as may be ordered by the Commission." See *Spintman v. C. & P. Tel. Co.,* 254 Md. 423. A public service company must "[f]urnish instrumentalities, utilities, services, and facilities which are safe, adequate, just and reasonable." § 28 (c). It may establish a new rate or change a rate upon 30 days notice to the Commission and upon the required publication, Code, Art. 78, § 27 (c), but the Commission may suspend any new rate proposed. "Unless so suspended, any new rate or change in rate proposed by the public service company, shall, subject to § 27 (c) of this article, go into effect upon the date specified in the application." Code, Art. 78, § 70 (a). Thus the Commission has the power, legislative in character, to regulate rates of public service companies, determining whether the rates they charge are just and reasonable.[3] Code, Art. 78, § 68; *Spintman v. C. & P. Tel. Co., supra,* at 427-428. And the Commission is charged with the duty of supervising and regulating all public service companies subject to its jurisdiction, and of enforcing compliance by

2. The Public Service Commission is excepted from the provisions of the Administrative Procedure Act. Code. Art. 41, § 244 (a).

3. " 'Just and reasonable rates' means rates which are not in violation of any of the provisions of this article, and which will result in an operating income to the public service company, except carriers of inflammables, yielding, after reasonable deduction for depreciation and other necessary and proper expenses and reserves, a reasonable return upon the fair value of the company's property used and useful in rendering service to the public." Code, Art. 78, § 69 (a).

such companies with all the requirements of law, including requirements with respect to manner of operation, rates, and service. Code, Art. 78, § 56. So it may fulfill this duty and its general duties and exercise its powers, the Legislature provided that proceedings be conducted before the Commission and designated the procedures to be followed. Code, Art. 78, §§ 76-88. The Commission is authorized to receive complaints from any person, § 77 (a) or proceed on its own motion, § 77 (c) and to conduct investigations, § 77 (b) and hearings, §§ 79 and 82, serve process, § 78, issue subpoenas, § 80, and compel testimony on the production of evidence, § 81. In all hearings it shall prepare an official record, which shall include testimony and exhibits, § 83. The proceedings are governed by the rules of the Commission. It is not bound by the technical rules of evidence or procedure of courts of law or equity, § 76. It shall take final action by order, § 77 (d), which in any contested action shall be in writing and state concisely the grounds for the Commission's conclusions, § 85. There are provisions for judicial review at the circuit court level, §§ 89-97, and further review at the appellate level, § 98. We spell all this out because it is pertinent to the determination of this appeal.

## II

It is the position of Pincoffs that the court below had authority to issue the injunction *pendente lite* because it had jurisdiction to entertain the petition for a declaratory judgment presented by him. He claims the court was vested with this jurisdiction by Code, Art. 78, § 89:

> "The validity of any rule or regulation of the Commission may be determined upon petition for a declaratory judgment addressed to the Superior Court of Baltimore City or to the circuit court for the county where the petitioner has its principal office in this State whenever it appears that the rule or regulation, or its threatened application, interferes with or impairs, or threatens to interfere

with or impair, the legal rights or privileges of the petitioner. The Commission shall be made a party to the proceeding. The declaratory judgment may be rendered whether or not the petitioner has first requested the Commission to pass upon the validity of the rule or regulation in question."

The Telephone Company, on the other hand, asks what rule or regulation of the Commission is involved to invoke the provisions of § 89. It is a question that Pincoffs does not satisfactorily answer.

It is patent that Pincoffs is attacking portions of a Telephone Company tariff schedule. He asserts in paragraph 16 of the Petition for a declaratory judgment:

"That your Petitioner is informed, and believes, and therefore alleges, that the said Tariff 205, at least to the extent that it authorizes interface/recorder-coupler fees and compels the installation thereof for the use of customer-owned telephone-answering and message-recording devices, is absolutely void and of no effect, and a nullity, as tending to perpetuate in defendant C & P a monopoly in the sale or lease of such devices, its own models of which said Defendant offers to its customers for an installation and monthly rental fee as aforesaid, in violation of the Sherman Act, §§ 1 and 2, 15 U.S.C.A. §§ 1 and 2, of § 3 of the Clayton Act, 15 U.S.C.A. § 14, [sic] and of Article 41 of the Bill of Rights of the Constitution of Maryland." [4]

The provisions aggrieving Pincoffs are set out in §§ 1 and 5 of the Telephone Company's Tariff P.S.C. Md. No. 205, a

---

4. Art. 41 of the Declaration of Rights of the Constitution of Maryland declares "That monopolies are odius, contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered." The activities of a public service company are exempted from the provisions of the Maryland Anti-Trust Act. Code, Art. 83, § 39 (3). The court below was without jurisdiction to entertain claims of violations of the federal Sherman Act and Clayton Act. See *Grempler v. Multiple Listing Bureau,* 258 Md. 419.

certified copy of which was appended to the Petition for a declaratory judgment. It is clear that a tariff schedule is not a "rule or regulation of the Commission" within the contemplation of Art. 78, § 89. It is not an act of the Commission but an act of the Company in compliance with the affirmative duties imposed by law. That the Commission may have allowed the schedule to remain as submitted or revised it under its power to determine whether it was just and reasonable, did not make it a rule or regulation of the Commission. It is correct that the Legislature gave the Commission authority to regulate rates, but it precisely defined what "rates" encompassed in § 2 (q) of Art. 78:

> " 'Rates' includes tolls, fares, tariffs, fees, prices and any other charges for public utility services, whether individual or joint, of a public service company; and *any schedule, regulation, classification or practice of any public service company* affecting the amount of such charge or the nature and value of the services rendered therefor." (emphasis added)

As we pointed out, the Legislature established a comprehensive procedure by which a person having a complaint concerning the "rates" of a public service company may seek redress. The means open to Pincoffs for the grievance he felt he suffered was not through declaratory action under § 89 but through the procedure established for hearings before the Commission. Code, Art. 78, subtitle "Procedure Before Commission", §§ 76-88. As we have indicated, if he were unhappy with the conclusion of the Commission at such proceedings, judicial review was then available to him, § 90, first in an equity court in Baltimore City, § 91, and further by appeal to the Court of Appeals of Maryland until 1 January 1975 and thereafter to the Court of Special Appeals of Maryland. Code, Art. 78, § 98; Courts Art. § 12-308.

We believe that not only the legislative language but the legislative scheme supports our view that declaratory judgment proceedings under § 89 are limited to Commission

rules and regulations. Under the subtitle "Judicial Review", § 89 speaks only of "any rule or regulation of the Commission." Section 90 refers to "an order of the Commission". The remaining sections under the subtitle which relate to judicial review are couched in terms of "any rule, regulation or order of the Commission" and are generally applicable to review under either § 89 or § 90.

We conclude the court below was without jurisdiction under Code, Art. 78, § 89 to entertain the Petition for declaratory judgment filed by Pincoffs.

### III

Pincoffs suggests that even if his action is not properly brought under Art. 78, § 89, it would lie under the Uniform Declaratory Judgments Act. Courts Art. §§ 3-401 to 3-415, inclusive. Although the legislative mandate is that the Act ". . . be liberally construed and administered", § 3-402, and although the enumeration of matters in §§ 3-406, 3-407, and 3-408 subject to the Act explicitly do not limit or restrict the general powers bestowed to declare rights, status, and other legal relations, § 3-403, the provisions of § 3-409 (b) defeat the suggestion. It reads: *"Special form of remedy provided by statute —* If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle." We have found that Art. 78, §§ 76-88 provide a special form of remedy — a hearing before the Commission — for the relief Pincoffs sought. He was bound to follow this remedy. See *Friendship Heights v. Funger,* 265 Md. 339; *Hartman v. Prince George's County,* 264 Md. 320; *Gingell v. Board of County Comm's* 249 Md. 374; *Tanner v. McKeldin,* 202 Md. 569. "The rule that when an appeal from the action of an administrative body is provided by statute, such remedy is exclusive, is older than declaratory judgment and has a wider application." *Commissioners of Cambridge v. Eastern Shore Pub. Ser. Co.,* 192 Md. 333, 337. That case observed that the rule ". . . is predicated upon the undesirability of by-passing administrative action, particularly where such action is within the expert knowledge of the administrative

tribunal." *Ibid.* It pointed out that the cases where the rule has not been applied involved property or constitutional rights which are essentially judicial and not administrative questions.[5] We conclude that the action brought by Pincoffs was not authorized by the Uniform Declaratory Judgments Act.

## IV

We hold that the court below had no jurisdiction to entertain the Petition for declaratory judgment filed by Pincoffs. Therefore, it had no authority to issue the interlocutory injunction *pendente lite.* The order of 7 March 1974 granting an interlocutory injunction *pendente lite* is vacated. The order of 12 March 1974 denying the Telephone Company's motion to dismiss the action is reversed. Maryland Rule 1087. Judgment is entered dismissing the action. Rule 1075. Pincoffs was entitled to have a judicial review of his complaint but not under the course he has taken. He should have first exhausted the special remedy provided by the Legislature. "Where an administrative remedy is available, such as a hearing before the Public

---

5. *Commissioners of Cambridge v. Eastern Shore Pub. Ser. Co., supra,* held that the right to complain to the Public Service Commission was not such a statutory remedy as to preclude the determination whether the Eastern Shore Public Service Company was without a franchise to serve the citizens of Cambridge with electric power. The rationale of the holding was that the power to grant a franchise was a legislative function, the validity or extent of charter powers or franchises was a judicial question, and that if the complaint were to be lodged with the Commission there could be no effective relief. 192 Md. at 340-341. Such is not the case here.

In *Pressman v. State Tax Commission,* 204 Md. 78, declaratory judgment proceedings were held to lie with respect to the constitutionality of a statute reducing the franchise tax on savings banks even though there was a statutory remedy for testing action taken by the State Tax Commission. The claim was that the title of the statute attacked was not sufficiently descriptive of the body. Clearly there, unlike here, there would be no by-passing of the exercise of an administrative body of its function as an expert.

We think that *Schneider v. Pullen,* 198 Md. 64, *Miller Bros. Co. v. State,* 201 Md. 535, and other cases cited by Pincoffs are equally inapposite.

Provisions comparable to those of Courts Art. § 3-409 (b) concerning the effect of a special form of remedy provided by statute first appeared in the Declaratory Judgments Act upon its repeal and reenactment by Acts 1945, ch. 724, codified as Art. 31A, § 6.

Service Commission, to determine the reasonableness of a rate [which includes any schedule, regulation, classification or practice of any public service company affecting the nature of the services rendered], prior resort to that remedy is a necessary prerequisite to a standing before the courts." *Spintman v. C. & P. Tel. Co., supra,* at 428.

The Telephone Company filed two briefs, one on 3 June 1974 and the other on 5 June 1974. The first filed contained an appendix not authorized by the Rules applicable to appeals to this Court. Compare Rule 828 a. In taxing the costs the Clerk shall not include the cost of printing the Telephone Company's brief filed 3 June 1974. Rules 1081 and 1082.

> *Order of 7 March 1974 granting interlocutory injunction* **pendente lite vacated; order** *of 12 March 1974 denying appellant's motion to dismiss the action reversed; judgment entered dismissing the action; costs to be paid by appellee.*