STILLMAN & DOLAN, INC. ET AL. *v.* THE CHESA-
PEAKE & POTOMAC TELEPHONE COMPANY
OF MARYLAND

[No. 456, September Term, 1975.]

*Decided January 30, 1976.*

The cause was argued before ORTH, C. J., and THOMPSON, MOYLAN and MENCHINE, JJ.

*Peter Parker,* with whom were *White, Page & Lentz* on the brief, for appellants.

*James S. Hamasaki* and *Paul v. Niemeyer,* with whom were *J. William Sarver* and *Piper & Marbury* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

We hold in this appeal that the Court of Common Pleas in Baltimore City did not err in sustaining without leave to amend the demurrer of The ·Chesapeake and Potomac Telephone Company of Maryland (Telephone Company) to the declaration filed by Stillman & Dolan, individually and as agent for sixty-two other plaintiffs, "in their own behalf and on behalf of all other subscribers of [the Telephone Company] similarly situated" (Stillman).

The declaration, filed 12 October 1972, instituting an action in assumpsit for money payable by the Telephone Company to Stillman, contained four counts. The first three were the common counts.[1] The fourth count set out the heart of the action. It alleged that the Telephone Company was a public service and telephone company as those terms are defined in Code, art. 78, § 2.[2] As such, the Telephone

---

1. "1. For money paid by the plaintiffs for the defendant at its request.
2. For money received by the defendant for the use of the plaintiffs.
3. For money found to be due by the defendant to the plaintiffs on accounts stated between them."

2. " *'Public service company'* means a ... telephone company. ..." Code, art. 78, § 2 (o).
" *'Telephone company'* includes any public service company which owns telephone lines for the· reception, transmission or communication of

Company operated a telephone communications system on a monopoly[3] basis throughout Maryland under rules and regulations promulgated by the Public Service Commission (Commission).[4] The Telephone Company had on file with the Commission tariffs providing certain maximum rates[5] to be charged its customers for services specified in the tariffs. Pursuant to these tariffs, the narr declared the Telephone Company "agreed to provide services at the lowest rates obtainable between any two points within the State of Maryland or for the charges relating to the intra-state aspects of multistate telephone charges." It asserted that Code, art. 78, § 26 "specifically prohibits [the Telephone Company] from charging, demanding or receiving from any person a greater or lower compensation than from any other person under substantially similar circumstances."[6] The

---

messages by telephone or teletype, or which lets, licenses, or sells telephonic or teletype communication." Code, art. 78, § 2 (z).

The meanings of certain of the terms used in the above definitions are set out in other subsections of art. 78, § 2: "company", subsection (e); "own", subsection (j); "plant", subsection (m); "telephone lines", subsection (aa).

**3.** Art. 41 of the Declaration of Rights of the Constitution of Maryland declares "That monopolies are odious contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered." The activities of a public service company are exempted from the provisions of the Maryland Anti-Trust Act. Code, art. 83, § 39 (3).

**4.** "The jurisdiction and powers of the Public Service Commission shall extend to all public service companies, as hereinafter defined, engaged in or operating a utility business in this State . . . to the full extent permitted by the Constitution and laws of the United States." Code, art. 78, § 1. See Code, art. 23, subtitle "Telegraph and Telephone Companies", §§ 317-327. The Public Service Commission is exempted from the provisions of the Administrative Procedure Act. Code, art. 41, § 244 (a).

**5.** " '*Rates*' includes tolls, fares, tariffs, fees, prices and any other charges for public utility services, whether individual or joint, of a public service company; and any schedule, regulation, classification or practice of any public service company affecting the amount of such charges or the nature and value of the services rendered therefor." Code, art. 78, § 2 (q).

**6.** Code, art. 78, § 26 reads:

"(a) *Preferences and discrimination prohibited.* — No public service company shall (with the exceptions listed in the following subsection) directly or indirectly, by any means whatever (including but not limited to special rates, rebates, drawbacks or refunds) in respect of any service rendered or commodity furnished by it:

(1) Charge, demand or receive from any person a greater or less compensation than from any other person under substantially similar circumstances;

(2) Extend any privileges or facilities to any person except such

declaration states that the tariffs filed provided "for certain specific charges to be applicable within the State of Maryland for those customers desiring to have direct toll-free calling privileges between their location within the State of Maryland and Washington, D. C. Such tarriffs apply for all direct toll-free calling to Washington, D. C. from all points within the State of Maryland with the exception of those areas within the State in the so-called Washington, D. C. metropolitan area which include Washington, D. C. within their local calling area. Such charges on a monthly basis are based on a mileage charge providing for a certain minimum charge for each line installed plus a mileage charge of $3.00 per mile for the first 25 miles of distance covered by such line and $2.10 per mile thereafter up to a distance of 100 miles." The declaration further alleged that Stillman had been repeatedly overcharged for services with respect to tariffs relating to the installation and usage of direct toll-free calling lines to Washington, D. C. It declaimed:

"Pursuant to the requirements of the tariffs on file at the Public Service Commission of Maryland and the requirements of the law of the State of Maryland prohibiting preference and discrimination referred to above, [the Telephone Company] has been, is and should be required to furnish its services on a uniform and non-discriminatory basis. Thus, for example, customers residing and situate in Baltimore City who desire direct toll-free calling to Washington, D. C. should be given one of the following exchanges located in Laurel, Berwyn and/or Glendale — 953, 345, 474, 552, 982, 390, or 794 — in order to minimize the mileage charges for such customers. In fact, [the Telephone Company] has

as are uniformly extended to all persons under substantially similar circumstances;

(3) Give any undue or unreasonable preference to or discriminate against or cause any undue or unreasonable prejudice to, any person, locality, or particular class of service."

Exceptions set out in subsection (b) are not here applicable.

over a long period of time deliberately refrained from giving its Baltimore customers one of such exchanges and, assuming its customer to be unknowledgeable of the tariffs on file at the Public Service Commission of Maryland, has steered said customers into using Baltimore City exchanges which, in effect, more than double the mileage charges applicable for such customers for such direct toll-free calling. The same holds true in equal measure for other areas of this state. A few selected customers have been granted numbers for such direct toll-free calling in the above listed exchanges which are available for the purposes enumerated. All other customers, which includes all of the plaintiffs herein, have been arbitrarily discriminated against and are entitled to refunds of all sums paid by them in excess of the aforementioned tariffs together with a reduction in present and future charges plus punitive damages and attorneys' fees as well as the costs of this action."

Stillman prayed:

"a. That judgment be entered against [the Telephone Company] in an amount to be established by the Court, such sum to constitute a sum total of all excess charges made by the defendant relating to its direct toll-free calling program to Washington, D. C. in the past together with such punitive damages which the Court feels appropriate under the circumstances, it being estimated at this time that such sum is approximately $2,000,000.

b. That [the Telephone Company] be ordered to forthwith cease and desist from all preferences and discrimination in said direct toll-free calling program to Washington, D. C. and that all of its customers who are under substantially similar circumstances be treated in the same manner.

c. That [Stillman] be awarded attorneys' fees and the costs of this action.

d. That [Stillman] may have such other and further relief as the case may require."

The Telephone Company demurred to each count on the grounds that the declaration purported to allege a violation of Code, art. 78, § 26 in that the Telephone Company discriminated against Stillman, that The Public Service Commission Law [7] provides that complaints of this type be filed with the Commission, which has authority to hear them in the first instance, subject to judicial appellate review, that the declaration failed to allege exhaustion of the administrative remedy, and that the failure to exhaust the administrative remedies authorized, denied Stillman's standing to sue in the courts. Maryland Rule 345; *Allen v. Wilkinson*, 250 Md. 395 (1968).

On 9 August 1974, upon motion of Stillman, the court ordered that Maryland Rule 530 a, subjecting the action to dismissal for lack of prosecution, be suspended for six months from that date. On 29 October 1974 the court, denying the Telephone Company's motion to "Postpone Time to Answer Plaintiff's Interrogatories pending ruling on Demurrer", ordered that the hearing on the demurrer be promptly set. The court ruled on the demurrer on 14 May 1975.[8] By its order, it sustained the demurrer without leave to amend. A memorandum opinion included in the order read:

"Preferences and discrimination in respect to any service are a violation of *Article 78, Section 26, Annotated Code of Maryland.*

Under *Article 78, Section 56,* the Public Service Commission has the duty of enforcing compliance

---

7. The short title of art. 78 authorized by its § 107.

8. In the interim both Stillman and the Telephone Company were active. On 5 December 1974 the Telephone Company filed answers to the interrogatories propounded by Stillman, and on 13 December it submitted a supplemental memorandum of law in support of its demurrer. On the latter date Stillman excepted to the answers to the interrogatories and on 19 December requested a hearing on the exceptions.

by such companies with all the requirements of law, including service.

*C & P Telephone Co., vs. Pincoffs, 23 Md. App. 474, 478; Spintman vs. C & P Telephone Co., 254 Md. 423.*

The procedures before the Commission are outlined in *Article 78, Sections 76-88.* There are provisions for review at both the circuit and appellate level. *Article 78, Sections 89-98.*

Plaintiffs are bound to follow the special form of remedy provided for in *Article 78, Sections 76-88,* i.e., a hearing before the Commission.

In the present posture of the Plaintiff's complaint, the Court feels that it is without jurisdiction to entertain the cause of action."

Stillman noted an appeal.[9] The issue for decision is the propriety of the action of the court below in sustaining the demurrer without leave to amend.[10]

The general rule is that when we consider the propriety of an order sustaining a demurrer without leave to amend, we are required to assume, for the purposes of the ruling, the truth of all material and relevant facts that are well pleaded as well as all inferences which can be reasonably drawn from those well pleaded facts. *Schwartz v. Merchants Mort. Co.,* 272 Md. 305, 307-308 (1974); *Kight v. Bowman,* 25 Md.

---

**9.** The "Order for Appeal" filed 5 June 1975 requested of the Clerk of the court below: "Please enter an appeal to the Court of Special Appeals of Maryland from the order of May 14, 1975 sustaining the demurrer of defendant to plaintiffs' declaration without leave to amend."

Judgment absolute in favor of the Telephone Company for costs of suit was entered on 14 May 1975. See Rule 345, § e.

**10.** Stillman presents the question "Do the courts or the Public Service Commission have jurisdiction over suits for money damages in a case in which a public utility is a party? "

The Telephone Company asks whether the court below held "correctly that complaints alleging discrimination in violation of The Public Service Commission Law should be presented in the first instance to the Public Service Commission to exhaust administrative remedies? "

No issue is raised on appeal with respect to the trial court's action on the demurrer in the frame of reference of the common counts. See note 1, *supra.*

App. 225, 227 (1975). But here the question is one of law going to the jurisdiction of the trial court. Md. Rule 345 a 1. See *Legum v. Blank*, 105 Md. 126, 135 (1907).

We spelled out the jurisdiction and powers of the Commission in *C. & P. Telephone Co. v. Pincoffs*, 23 Md. App. 474, 478-479 (1974), *cert. denied*, 274 Md. 730 (1975):

> "[T]he Commission is charged with the duty of supervising and regulating all public service companies subject to its jurisdiction, and of enforcing compliance by such companies with all the requirements of law, including requirements with respect to manner of operation, rates, and service. Code, Art. 78, § 56. So it may fulfill this duty and its general duties and exercise its powers, the Legislature provided that proceedings be conducted before the Commission and designated the procedures to be followed. Code, Art. 78, §§ 76-88. The Commission is authorized to receive complaints from any person, § 77 (a) or proceed on its own motion, § 77 (c) and to conduct investigations, § 77 (b) and hearings, §§ 79 and 82, serve process, § 78, issue subpoenas, § 80, and compel testimony on the production of evidence, § 81. In all hearings it shall prepare an official record, which shall include testimony and exhibits, § 83. The proceedings are governed by the rules of the Commission. It is not bound by the technical rules of evidence or procedure of courts of law or equity, § 76. It shall take final action by order, § 77 (d), which in any contested action shall be in writing and state concisely the grounds for the Commission's conclusions, § 85. There are provisions for judicial review at the circuit court level, §§ 89-97, and further review at the appellate level, § 98.

Section 56 of art. 78 reads in full:

> "The Commission shall supervise and regulate all public service companies subject to its jurisdiction,

and shall enforce compliance by such companies
with all the requirements of law, including, but not
limited to requirements with respect to financial
condition, capitalization, franchises, plant, manner
of operation, rates, and service. The powers and
duties enumerated specifically in this subtitle are
not intended to limit the scope of the general
powers and duties of the Commission provided for
by this article."

It is clear that the Legislature established a comprehensive
scheme with respect to matters within the jurisdiction and
power of the Commission. That scheme embraced the view
that the Commission was first to determine such matters
under procedures carefully designated, with judicial review
thereafter available, Code, art. 78, § 90, first, at the circuit
court level, § 91,[11] and then at the appellate level, § 98 and
Courts Art. § 12-308. When the Public Service Commission
Law contemplates a hearing before the Commission, that
procedure must be followed. *C. & P. Telephone Co. v.
Pincoffs, supra,* at 482 and cases therein cited. See also
*David W. Chertkof Trust v. Department of Natural
Resources,* 265 Md. 291, 295 (1972); *Spintman v. C. & P. Tel.
Co. of Md.,* 254 Md. 423, 428 (1969); *Poe v. Baltimore City,*
241 Md. 303, 311 (1966); *Gayer v. Kasdon,* 234 Md. 7, 9-10
(1964); appeal dismissed, 379 U. S. 13 (1964); *Shpak v.
Mytych,* 231 Md. 414, 417-418 (1963). We said in *Pincoffs,* at
483-484, quoting in part from *Spintman,* at 428:

"Where an administrative remedy is available,
such as a hearing before the Public Service
Commission, to determine the reasonableness of a
rate [which includes any schedule, regulation,
classification or practice of any public service
company affecting the nature of the services
rendered], prior resort to that remedy is a nec-
essary prerequisite to a standing before the
courts."

---

11. "Proceedings for review under § 90 of this article shall be instituted
in the circuit court for any county within which operations are carried on
by the public service company involved, or in any equity court in Baltimore
City." Code, art. 78, § 91 (a).

The rationale of this rule was succinctly expressed in *Gingell v. Board of County Commissioners*, 249 Md. 374, 376-377 (1968):

> "The reasons for requiring the exhaustion of administrative remedies before resorting to the courts are that it is within the expertise of the administrative agency involved to hear and consider the evidence brought before it and make findings as to the propriety of the action requested; court would be performing the function that the legislature specified by done by the administrative agency; courts might be called on to decide issues that would never arise if the prescribed administrative remedies were followed; and where a statute provides a specific form of remedy in a specific case then this remedy must be followed. . . ."

The propriety of the lower court's action in sustaining the demurrer without leave to amend, therefore, turns on whether, upon the facts alleged in the declaration, there was an administrative remedy available. That is, was there a specific form of remedy provided by the statute which had to be exhausted before resort to the courts.

It is manifest that, under the declaration, Stillman would nowise be entitled to the specific relief prayed unless it was first established that the Telephone Company did " [c]harge, demand or receive from any person a greater or less compensation than from any other person under substantially similar circumstances", or did "[e]xtend any privileges or facilities to any person except such as are uniformly extended to all persons under substantially similar circumstances", or did " [g]ive any undue or unreasonable preference to or discriminate against or cause any undue or unreasonable prejudice to, any person, locality, or particular class of service." In other words, as a basis for the award of damages constituting "a sum total of all excess charges made by [the Telephone Company] relating to its direct toll-free calling program to Washington, D. C. in the

past together with such punitive damages" appropriate in the circumstances, and as a basis for an order that the Telephone Company "cease and desist from all preferences and discrimination in said direct toll-free calling program to Washington, D. C." and that it treat "all of its customers who are under substantially similar circumstances . . . in the same manner", it must be found that the Telephone Company violated the dictates of § 26 of art. 78. It is the clear legislative intent, apparent from the Public Service Commission Law, that this determination, in the first instance, be by the Commission and not by the courts. Such a determination is within the expertise of the Commission, and it is the function of that agency to hear and consider evidence brought before it, and its duty to make findings on the propriety of the Telephone Company's actions, assuming, with respect to the demurrer, they are as alleged in the declaration. We can conceive that there may be valid reasons why demands for every type of service cannot always be met forthwith. Whether particular facts constitute a failure to extend a privilege or facility uniformly enjoyed by others under substantially similar circumstances, or whether the failure or refusal to grant certain services results in "any undue or unreasonable preference", or is discriminatory, or causes "any undue or unreasonable prejudice", cries for expert evaluation, and this evaluation is the function of the Commission. Stillman is aggrieved because it was not provided with toll-free calling lines to Washington, D. C. when others, similarly situated, had them. It suggests, in its declaration, that "customers residing and situate in Baltimore City who desire direct toll-free calling to Washington, D. C. should be given one of [certain designated exchanges] in order to minimize the mileage charges for such customers." And it asserts that the Telephone Company "has over a long period of time deliberately refrained from giving its Baltimore customers one of such exchanges and, assuming its customers to be unknowledgeable of the tariffs on file . . ., has steered said customers into using Baltimore City exchanges" at a substantially higher cost. We think it properly requires the expertise of the Commission to determine, in the light of

circumstances existent, whether the failure to provide toll-free lines was deliberate with an undue and unreasonable prejudice to those who did not have them and an undue and unreasonable preference to those who had them. The Telephone Company argues, and we believe fairly, that Stillman would call upon a jury [12] "to determine initially such questions as whether expediting the unusual service it seeks would place an unreasonable burden on the availability of regular toll service to the general public, whether it would adversely affect [the Telephone Company's] ability to provide local exchange service, and whether it is economically prudent in the interest of the public to invest the resources required, on a crash basis, for additional switching and interexchange facilities, bearing in mind that the Commission would in due course have to impose the cost burden on the telephone-using public. . . . Whether and to what extent [the Telephone Company] should alter its construction programs in order to meet the needs of one class of customers or another, or to meet the needs of one area of the State as distinguished from other areas, is a question which will tax the experience and knowledge of the members of the Public Service Commission." All such issues, the Telephone Company observes, "are normally ventilated before the Commission when complaints regarding adequacy of service are brought before it." [13] And, we add, properly so. As the Court of Appeals said in *Spintman v. C. & P. Tel. Co.*, *supra*, at 429, with reference to the function of rate making: "The soundness of having such matters originally determined by a commission of persons qualified to evaluate the issues in a specialized field lies beyond dispute." We, as did the court below, find strong support in *Spintman* for the view that Stillman must exhaust the available administrative remedies before resort to the courts. *Spintman* dealt with the rate making power of the Commission. Spintman

---

12. Stillman elected "to have this case tried by jury."

13. The Telephone Company's brief at 8. This argument was also presented to the court below in a "Memorandum of Points and Authorities in Support of Demurrer."

contended that "the court may well determine that a rate is discriminatory or produces excessive revenues and grant a retroactive refund to correct this injustice, without in fact, engaging in the function of rate making." The Court of Appeals observed: "This is a spurious argument which advocates that a court may do by indirection that which it is not permitted to do directly. . . . If we were to follow the argument advanced by [Spintman] to its logical conclusion, we would witness the chaotic situation where juries would be performing the rate making function of the Public Service Commission by having a veto power over rates. Certainly, such would be the ultimate and practical effect of their action if they were allowed to render a verdict for reparation in favor of the plaintiff consumer in an action of assumpsit." 254 Md. at 428. The observation is apt with respect to any question which it is the duty of the Commission to determine originally. The Court of Appeals noted in *Spintman*, at 429, that an action in assumpsit may well be the proper remedy for collection of an overcharge "where the consumer was charged a rate not in conformity with the established and published tariff set by the Commission or where there was error in the computation or application of the established rate." But the Court was not confronted with such a situation in *Spintman*, nor are we here. Here, as in *Spintman*, the consumers were charged the approved tariff for the service in fact provided them. Therefore, § 103 of art. 78 would not be applicable.[14] Here, as in *Spintman*, they strive, by a collateral attack, to have declared discriminatory and unreasonable acts or omissions of the Telephone Company. Here, as in *Spintman*, the consumers minimize the nature of this collateral attack by emphasizing that it is necessary in order to support their claim for reparations. *Id.*, at 429. The Court in *Spintman* was not persuaded by the argument, nor are we. It found that the declaration there failed to state a cause of action

---

**14.** Code, art. 78, § 103 provides: "In any action by any public service company for the collection of any charge, no recovery shall be had if in the transaction on which suit is brought, the company has demanded a rate in excess of that which is lawful under this article at the time." See *Spintman*, at 432-433.

and affirmed the action of the lower court in sustaining the appellee's demurrer, without leave to amend." *Id.*, at 433. We believe the rationale of *Spintman* to be controlling and do likewise.[15]

*Carter v. The Suburban Water Co.*, 131 Md. 91 (1917) cited by Stillman, does not compel a contrary conclusion. In *Carter*, at 95, the Court said: "We do not find that the Public Service Commission is invested with the power to hear and determine the controversy between the parties as to the correctness of the bills rendered, or to determine what amount the plaintiff owes." This finding was reached in equity on a bill for an injunction to restrain the water company from cutting off the supply of water to Carter's houses. The threat to cut off the water arose from a refusal

---

15. The Court set out the allegations in the *Spintman* declaration at 424-425 of 254 Md.:

> "Daniel A. Spintman and Judith A. Spintman, his wife (appellants), are subscribers to the '262' exchange service of the appellee, Chesapeake and Potomac Telephone Company of Maryland. Appellants brought an action in assumpsit for themselves, and on behalf of all other similarly situated subscribers to the '262' exchange service in the City of Bowie, and other areas in Prince George's County, Maryland, that are not within the area designated for telephone rate services as the 'Washington, D. C. Metropolitan Exchange Area' (D. C. Area). The first count of appellant's declaration claims reimbursement for money paid for telephone services at rates that include mileage and other charges which are not included in the rates charged by the appellee for similar services to subscribers within the 'D. C. Area,' to the extent of such mileage and other charges. Appellants allege that they are under substantially similar circumstances as those persons who subscribe to the appellee's service within the 'D. C. Area,' who do not pay such mileage and other charges and that the mileage and other charges applied to appellants are unjustly discriminatory charges for like services under like conditions.

> The second count of appellants' declaration claims money paid for telephone service at rates in excess of just and reasonable rates, resulting in excessive compensation to the appellee, and demands reparations to the extent of such excessive compensation in the amount of $2,500,000.00."

As is obvious, the situation in *Spintman* and the situation here are very similar. The question in *Spintman* was phrased thus by the Court, at 425:

> "We are presented with the question of whether telephone subscribers who have accepted, used, and paid for telephone service, on terms not alleged to be different from those stipulated in tariffs on file with the Public Service Commission, can attack those tariff rates retroactively and demand refunds in an original court proceeding allegedly based on common law rights."

by Carter to pay a bill for water. He claimed that the water company had failed to supply the houses with a suitable quantum of water and offered to pay such sum of money as would reasonably and fairly represent the proper charges for the services rendered. Thus, the issue was simply the correctness of the bill with no question of rate, discrimination, or preferences. The Court continued, at 95: "But if that power [to determine the correctness of the bill] be conceded, the Court of Equity would not for that reason be deprived of its original jurisdiction to grant the injunction. It has been long since settled, that where a Court of equity has original jurisdiction, and a statute confers upon the common law courts a similar power, the jurisdiction of equity is not thereby ousted." Even assuming this ruling to be the law today, it would not be applicable to the action at law here.

The answer to the question Stillman presents, set out in note 10 *supra*, is that, under the facts and circumstances, the Commission had original jurisdiction over the matter, at the least for the determination whether the Telephone Company violated the mandates of art. 78, § 26. The answer to the question the Telephone Company presents, also set out in note 10 *supra*, is that the lower court held correctly that complaints alleging discrimination in violation of the Public Service Commission Law should be presented in the first instance to the Commission. The rule requiring exhaustion of administrative remedies before resort to the courts may not be circumvented simply by seeking reparations. The answer to the issue for decision, as we see it, is that the action of the court below in sustaining the demurrer without leave to amend was proper. We note that we do not believe that the legislative scheme apparent in the Public Service Commission Law may be defeated by the bringing of a class action.

*Order of 14 May 1975 sustaining demurrer without leave to amend affirmed; judgment in favor of appellee affirmed; costs to be paid by appellants.*