688 A.2d 545

**BELL ATLANTIC–MARYLAND, INC.**

**v.**

**The MARYLAND STADIUM AUTHORITY.**

**No. 788, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Feb. 5, 1997.

642

Thomas F. McDonough (Royston, Mueller, McLean & Reid, L.L.P., on the brief), Towson, for Appellant.

Andrew H. Baida, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for Appellee.

Argued before FISCHER, DAVIS and THIEME, JJ.

DAVIS, Judge.

Bell Atlantic–Maryland, Inc. appeals from a judgment of the Circuit Court for Baltimore City granting appellee The Maryland Stadium Authority's motion to dismiss. Appellant brought suit against appellee for costs that appellant incurred when it was required to relocate and reroute underground cables and conduits due to the expansion of the Baltimore City Convention Center. Appellant presents the following question for our review which we restate below:

I. Did the lower court err in granting The Maryland Stadium Authority's motion to dismiss Bell Atlantic's complaint for relocation costs associated with the Baltimore City Convention Center expansion?

## FACTS

The Maryland Stadium Authority (the Authority or State) is "an instrumentality of the State and a public corporation...." MD.CODE ANN., FIN. INST. § 13–702(b) (1992, Supp.1996). The Authority is authorized to participate in the development, expansion and enhancement of the Baltimore City Convention Center (the Convention Center) and the construction and maintenance of other sports facilities in the Baltimore metropolitan area. *Id.* §§ 13–701—13–722. The Authority and the Mayor and City Council of Baltimore (the City) entered into the Baltimore Convention Center Construction, Operation, and Contribution Agreement and Lease (the 1993 Agreement) dated September 1, 1993. The 1993 Agreement provides that during the expansion and renovation process, various utilities, streets, and other public improvements will be constructed, relocated, and improved. The 1993 Agreement also states that, pursuant to Chapter 400 of the Acts of 1993 (House Bill 432), the Authority, State, and City agree to contribute up to $155 million to the cost of the planned expansion, provided that certain conditions are met. The City and Authority, upon completion of the construction of the facility and until June 30, 2008, also agreed to make annual contributions toward operating deficits of the new facility.

The expansion of the Convention Center necessitated the relocation and rerouting of underground cable and conduits owned by Bell Atlantic. The Authority and Bell Atlantic disagreed about who would be financially responsible for the costs of rerouting and relocating the cables. In order to avoid delaying the project, the Authority and Bell Atlantic entered into an agreement in which Bell Atlantic agreed to relocate its underground cables without waiving any rights to seek payment from the Authority at a later date. In addition, the Authority also agreed in the March 1, 1994 memorandum that it would not raise the defense that no written contract exists for the work to be performed.

Bell Atlantic performed the repairs and sent the Authority a bill in November 1995 for $110,206.09. The Authority failed

and refused to pay the bill, and Bell Atlantic filed suit for payment of the relocation costs in the Circuit Court for Baltimore City. The Authority filed a Motion to Dismiss, asserting that the complaint failed to state a claim because Bell Atlantic has an obligation pursuant to *Mayor and City Council of Baltimore v. Baltimore Gas & Electric Co.*, 232 Md. 123, 192 A.2d 87 (1963) (hereinafter *BG & E* ) to relocate its facilities at its own expense when those facilities are located under public streets that are closed as a result of the exercise of a governmental function. On March 5, 1996, the court granted the Authority's motion finding the *BG & E* case "very important in making a determination. . . ." The court stated:

> Clearly, the expansion of the Convention Center is a governmental function, it is not a proprietary function. It was done for the health and welfare of the people of this community. It is a facility that will, as presently contemplated, operate at a loss. It is not a profit-making [sic] unless some miracle happens, but the present projections are that the cost of the facility and operating costs of the facility will be such that it will be operated at a loss and will require supplemental contribution by government in order to keep it afloat and that is contemplated in the provisions that it will be operated at a loss and that additional government financing will be necessary.

Bell Atlantic appeals from the lower court's judgment.

## LEGAL DISCUSSION

 Bell Atlantic argues that the trial court erred in granting the Authority's motion to dismiss if its holding was based on *BG & E*. In reviewing the trial court's grant of the State's motion to dismiss, we assume the truth of all relevant and material well-pleaded facts, as well as all the inferences, favorable to appellant, that may reasonably be drawn from those pleadings. *Bennett Heating & Air Conditioning v. NationsBank of Maryland*, 103 Md.App. 749, 757, 654 A.2d 949 (1995), *aff'd in part and rev'd in part on different grounds*, 342 Md. 169, 674 A.2d 534 (1996). Thus, our function

is to determine whether dismissal was proper as a matter of law—that is, if the pleaded facts fail to state a cause of action. *Davis v. DiPino* 337 Md. 642, 648, 655 A.2d 401 (1995).

Appellant states that the rationale of *BG & E* does not control the facts in the instant case because here, the relocation was necessitated by State action whereas, in *BG & E,* the relocation was necessitated by municipal action. As such, appellant argues that different considerations apply to the relocations necessitated by State action. Furthermore, appellant asserts that even if the holding of *BG & E* applies to the case at bar, the lower court erred in concluding as a matter of law that the project involved was governmental in nature. In *BG & E,* the Court of Appeals held that

[t]he utility must bear the cost of relocating its facilities in and under streets which are closed for the furtherance of projects which are governmental, rather than proprietary, in nature unless (a) there is a taking of the utility's property in a constitutional sense or (b) there is an applicable legislative direction that the usual rule is not to apply and the City or the housing authority must pay.

*BG & E,* 232 Md. at 131, 192 A.2d 87. Alternatively, appellant argues that even if the project was governmental in nature, there is a "legislative direction" that the common law rule is not to apply.

**I**

Appellant asserts that the holding of *BG & E* does not apply to the case at hand because here, the relocation of utilities was necessitated by State rather than municipal action. Appellant asserts that there is a distinction between the sovereign immunity of a state that bars suits unless immunity is waived and the limited immunity of a municipality that bars certain suits in the exercise of its governmental but not its proprietary functions. Therefore, appellant contends that, when the relocation of facilities is necessitated by a municipality, the appropriate inquiry is that stated in *BG & E,* whether the action is governmental or proprietary in nature. When, how-

ever, the relocation is necessitated by State action, the appropriate inquiry is whether the State has waived its sovereign immunity.

■ Although *BG & E* involved the relocation of utility facilities due to several Baltimore City construction projects, the opinion does not state that its holding applies only to municipal actions. Rather, the Court held that the common law rule requiring the utility to pay for relocation of facilities is "merely an application of the rule that the grant of a franchise is subject to any proper exercise of the police power." *BG & E*, 232 Md. 123, 130, 192 A.2d 87 (quoting *McQuillin, Municipal Corporations*, vol. 12, § 34.72 at 241 (3rd ed.)). In *BG & E*, the Court adopted the holding of *Transit Comm. v. Long Island R.R. Co.*, 253 N.Y. 345, 171 N.E. 565, 566–67 (1930):

> Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public security and convenience require, at its own cost and charge ... public service corporations maintain their rights in the streets, subject to reasonable regulation and control, and are bound to relocate their structures at their own expense whenever the public health, safety or convenience requires the change to be made.

*Id.* at 130–31, 192 A.2d 87 (citations omitted). Furthermore, in *Baltimore Gas & Elec. Co. v. State Roads Comm.*, 214 Md. 266, 134 A.2d 312 (1957), as here, a public utility was required to relocate its facilities at its own expense due to a State agency project. We find no support for appellant's assertion that the common law rule applies to public utility companies only when a municipality undergoes a governmental project as opposed to a State governmental project. Rather, the common law rule limits the rights of public utilities in the public streets whenever the public welfare or safety requires the relocation of its facilities.

■ Appellant also argues that neither *BG & E* nor *State Roads Comm.* controls the instant case because both cases

were decided before the abolition of sovereign immunity in actions based on written contracts. Appellant contends that because the instant action is based on a written contract, the State, pursuant to MD.CODE ANN., ST. GOV'T § 12–201 (1995),[1] has waived the defense of sovereign immunity and cannot rely on its police power. Bell Atlantic also argues that the State has expressly waived its immunity as to the Authority because the Authority is an agency that can be sued.

Even assuming that the State waived its immunity, Bell Atlantic still must show that the common law in this case requires the State to reimburse Bell Atlantic for the costs of relocating its facilities. We conclude that there was no contract between the parties that required the State to reimburse Bell Atlantic. The letter agreement entered into by the Authority and Bell Atlantic was to avoid delaying the project. The agreement provided that Bell Atlantic would proceed with relocating its facilities and that Bell Atlantic was not waiving any rights to seek payment from the Stadium Authority or the City at a later date if it is determined that either or both parties are legally responsible for such payment. The Authority also agreed that it would not raise the defense that no written contract exists for the work to be performed. This agreement, however, does not commit the State to reimburse Bell Atlantic for the costs of relocating its facilities. Rather, it preserves Bell Atlantic's right to sue the Authority without the Authority raising the defense of sovereign immunity. The agreement is not a written contract pursuant to MD.CODE ANN., ST. GOV'T § 12–201 that alters Bell Atlantic's obligation under the common law to pay the costs of relocating its facilities. Instead, the agreement declares that neither party has assumed responsibility or waived its substantive rights.

---

**1.** MARYLAND CODE ANNOTATED, STATE GOVERNMENT § 12–201(a) provides that the State "may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee."

We, therefore, hold that the trial court properly granted the Authority's motion to dismiss because, based on its pleading, Bell Atlantic has not established that the common law rule requires the State, instead of Bell Atlantic, to pay the costs of relocating its facilities due to the expansion of the Convention Center.

## II

■ Appellant contends that even if *BG & E* applies to the instant case, the lower court erred in concluding as a matter of law that the project involved was governmental in nature. The Court in *BG & E* held, in part, that the utility must bear the costs of relocating its facilities under public streets for the furtherance of projects that are governmental, as opposed to proprietary, in nature. Appellant asserts that it was improper for the trial court to make a factual conclusion needed to determine whether the project was governmental.

■ In *BG & E*, the Court of Appeals stated the test for determining whether a function of a governmental entity is governmental or proprietary as follows:

> Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature.

*BG & E*, 232 Md. at 132, 192 A.2d 87 (quoting *Baltimore v. State*, 173 Md. 267, 276, 195 A. 571 (1937) and *County Com'rs of Harford County v. Love*, 173 Md. 429, 431, 196 A. 122 (1938)). The trial court, in the case at hand, applied the facts as supplied by appellant in its pleading and concluded as a matter of law that the Authority was acting in a governmental nature. *See* MD. RULE 2–322(c); *see also Morris v. Osmose Wood Preserving*, 99 Md.App. 646, 658, 639 A.2d 147 (1994), *aff'd in part and rev'd in part on other grounds*, 340 Md. 519, 667 A.2d 624 (1995) (in ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a

court must "assume the truth of all relevant and material facts well pleaded and all inferences which can be reasonably drawn from those facts."). Appellant stated no facts in its pleading which if true establish that the Authority was acting in a proprietary function.

The trial court concluded that "the expansion of the Convention Center is a governmental function, it is not a proprietary function ... [it was] done for the health and welfare of the people of this community ... that will, as presently contemplated, operate at a loss." The court applied the facts as pled by appellant to the well-established law set out in *BG & E* for determining when a project undertaken by a government entity is governmental as opposed to proprietary in nature. Looking at the facts pled in the light most favorable to appellant, the 1993 Agreement, attached as an exhibit and incorporated by reference to appellant's complaint, indicates that the Authority was acting in a governmental nature. *See* MD. RULE 2–303(d) (1996) ("A copy of any written instrument that is an exhibit to a pleading is a part thereof for all purposes.").

The 1993 Agreement between the City and the Authority states that the

City and the Authority anticipate that the Construction of the Facility shall result in greater volume of visitors and convention attendees to the Facility, the creation of new jobs for citizens of the City and the State, the generation of additional tax revenues to the City and the State, and a significant contribution to the prosperity and general health and welfare of the City and the State.

The pleading also indicates that the State and the City agreed to pay $155 million toward construction costs of the expansion of the Convention Center and that "each shall contribute toward the Operating Deficits of the Facility; it being recognized that convention centers generally operate at a loss...." Moreover, even if the Convention Center were to generate a profit, the 1993 Agreement provides that the State is to apply that surplus only towards the Convention Center's operating

deficit. Thus, the expansion of the Convention Center is "solely for the public benefit, with no profit or emolument inuring to the [State], and tends to benefit the public ... and has no element of private interest....." Furthermore, the Court previously held in *Kelly v. Marylanders for Sports Sanity, Inc.* 310 Md. 437, 467, 530 A.2d 245 (1987), that the Maryland Stadium Authority's statutory responsibility in constructing and operating sports facilities for professional baseball and football "is a legitimate governmental objective of long duration". and "designed for the maintenance of State government" and fulfills a "fundamental governmental purpose." *See also Burns v. Mayor and City Council of Rockville,* 71 Md.App. 293, 303, 525 A.2d 255 (1987) (a municipality exercises a governmental function when it presents a ballet as part of its operation of a civic center).

The trial court, therefore, properly held that the expansion of the Convention Center is a governmental, as opposed to proprietary, function. The pleading established that the expansion of the Convention Center was done for the health and welfare of the people of the community and that "[i]t is a facility that will, as presently contemplated, operate at a loss" and was not established as a profit-making facility. In addition, the pleading states that the facility will require supplemental contributions by the State and City in order to maintain its operations. Applying these facts to the law set out in *BG & E* for establishing when a project is considered governmental as opposed to proprietary, the court properly held that the Authority was acting in a governmental nature.

Moreover, even if the court's conclusions were considered to be improper findings of fact, the court's grant of the motion to dismiss was still proper. If a court's dismissal is based on improper findings of fact, it is not fatal to the court's decision. *Morris,* 99 Md.App. at 658, 639 A.2d 147. "It is well-established that 'an appellate court may, on a direct appeal, affirm a trial court's decision on any ground adequately shown by the record, even though not relied on by the trial court....'" *Id.* (quoting *Offutt v. Montgomery Co. Bd. of Ed.,* 285 Md. 557, 563 n. 3, 404 A.2d 281 (1979)). Because we

conclude that the facts in appellant's complaint if true do not establish that appellant is entitled to be reimbursed for the costs of relocating its facilities, we find the dismissal of appellant's claim proper.

### III

Finally, appellant contends that even if the expansion of the Convention Center is governmental in nature, and the rule of *BG & E* applies, it should be reimbursed for the costs of relocating its facilities because it fits into one of the two exceptions to the common law rule. Appellant does not argue that it fits into the "takings" exception to the rule, but contends that "there has been a 'legislative direction' that the usual rule of the *BG & E* case is not to apply." Appellant asserts that the legislative directive arises from the 1993 Agreement between the Authority and the City for the expansion of the Convention Center. Additionally, appellant argues that the Public Service Commission of Maryland has adopted Tariff No. 203, Section 2.B.6 which modifies the common law.

■ The common law rule applies unless the legislature directs to the contrary. *State Roads Comm.*, 214 Md. at 270, 134 A.2d 312. Appellant has not directed us to any applicable statute or ordinance which changes the common law. In *BG & E*, the Court held that "no alteration of the common law other than that specified and plainly pronounced was meant." *Id.* at 135, 192 A.2d 87. In the instant case, the legislature has given the Authority many powers including the power to sue and be sued and enter into contracts. The provisions of Section 13, Title 7, however, do not specifically alter the common law by stating that the Authority is responsible for the costs of relocating the facilities of public utility companies.

■ Appellant, however, argues that the 1993 Agreement between the State and the City alters the common law. Section 3.2 of the 1993 Agreement provides that the State, subject to the provisions of this Agreement and as Project Costs, shall ... obtain all necessary utilities, and provide for alternate services, including, but not limited to, ... (iii)

payment of any fees or expenses relating to new or relocated franchises, (iv) the payment of costs related to Baltimore Gas and Electric, and (v) other private utilities for recabling and other relocation efforts and otherwise provided in this Agreement, for example, in Section 5.4.2.

Section 5.4.2 provides:

In case of disruption to utility services provided by any private utility companies, the Authority, as a Project Cost, shall pay the costs and expenses to the satisfaction of any such private utility companies without the requirement of obtaining the consent or approval of the Department.

The 1993 Agreement, however, is not a legislative directive to change the common law, but rather, an agreement between the State and the City of how utility relocation expenses would be treated if either governmental party was required to pay them.

Finally, the Tariff relied on by appellant also is not a legislative directive to alter the common law. The Tariff provides that "[w]hen the Telephone Company is requested to move or change existing construction, the customer or other party requiring the move or change is required to pay the entire cost ... attributable to such relocation." We conclude that the Tariff does not modify the common law as set out in *BG & E* nor does it constitute a legislative direction that relocation costs related to the project may be recovered by Bell Atlantic.

The common law rule requires that the legislature must reverse the common law rule. A tariff is not the act of a legislative body, but a rate or charge that a public utility seeks for its services. *See Chesapeake and Potomac Telephone Co. v. Pincoffs,* 23 Md.App. 474, 328 A.2d 78 (1974), *see also* MD. ANN.CODE, art. 78, § 2(q) (1995). In *Pincoffs,* we stated "that the Commission may have allowed the schedule to remain as submitted or revised it under its power to determine whether it was just and reasonable, did not make it a rule or regulation of the Commission." *Id.* at 481, 328 A.2d 78. Thus, although the Public Service Commission's regulation of rates is a legis-

lative function, the Tariff is not the equivalent of the type of legislative act required to alter the common law rule.

Furthermore, even if the Tariff could be considered a legislative directive, the language of the Tariff has not reversed the common law rule because it contains no clear language demonstrating that it applies to the government. In *BG & E*, the Court held that the common law rule was not altered by an ordinance that stated that no buildings shall be constructed on the closed highway until subsurface structures "shall have been abandoned or shall have been removed and relaid ... at the expense of the person or persons or body corporate desiring to erect such buildings." *BG & E*, 232 Md. at 135, 192 A.2d 87. The City was the entity that built the structures and closed the highway. *Id.* The Court stated that "read in context the quoted language was not intended to, and does not include the City." *Id.* The Court held that "a statute in derogation of the common law is to be strictly construed." *Id.* "The presumption is that the legislative body did not intend to change the common law further than the situation dealt with required or, stated conversely, that no alteration of the common law other than that specified and plainly pronounced was meant." *Id.*

In the instant case there is no language in the Tariff that demonstrates that the provision applies to the government. Appellant has not pled facts sufficient to establish that the common law rule should not be applied to it, and therefore, Bell Atlantic is responsible for the costs of relocating its facilities.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**