SHERROD EAST et al. v. CHARLES W. GILCHRIST
ET AL.

[No. 74, September Term, 1982.]

*Decided August 8, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*William J. Chen, Jr.,* with whom were *Chen, Walsh & Tecler* on the brief, for appellants.

*Albert D. Brault* for appellees Charles W. Gilchrist et al. and by *Nathan J. Greenbaum, Assistant County Attorney,* for appellee Montgomery County, Maryland, with whom were *J. Gregory Boyland, Paul A. McGuckian, County Attorney,* and *Robert G. Tobin, Jr., Deputy County Attorney,* on the brief.

*Amicus curiae* brief of The Mayor and Council of Laytonsville filed by *David MacDonald.*

*Amicus curiae* brief of Mount Zion Citizens Association filed by *Daniel J. Cassidy.*

ELDRIDGE, J., delivered the opinion of the Court.

On December 2, 1977, the Environmental Health Administration of the Department of Health and Mental Hygiene ordered Montgomery County to identify a site for a new sanitary landfill. The order further required Montgomery County, after its designation of a landfill site and approval thereof by the Secretary of Health and Mental Hygiene,[1] to obtain the necessary permits for the county's operation of

---

[1]. The Department of Health and Mental Hygiene is a principal department of the Maryland State government and will hereafter in this opinion be referred to as "the Department." The Secretary of Health and Mental Hygiene is the head of the Department, and will hereafter be referred to as "the Secretary." *See* Maryland Code (1982), §§ 1-101 (c), 1-101 (i), 2-101, and 2-102 of the Health-General Article.

the landfill. Accordingly, the county proceeded to plan for the development of a new sanitary landfill. Montgomery County initially selected four sites for the placement of the landfill and amended the county's ten-year solid waste management plan to reflect these selections.[2] The county ultimately chose a 550 acre site near the town of Laytonsville, in an area zoned R-2 residential, for the placement of the sanitary landfill.

Several Montgomery County residents, in the meantime, initiated a proposed amendment to the Montgomery County Charter, designed to prevent the expenditure of county funds for the operation of sanitary landfills on residentially zoned land. This amendment was placed on the November 1978 general election ballot and approved by the county voters. The amendment became Art. 3, § 311A, of the Montgomery County Charter. Section 311A provides:

"§ 311A. Limitations on expenditures for landfills in residential zones.

No expenditure of county funds shall be made or authorized for the operation of a landfill system of refuse disposal on land zoned for residential use."

Despite this charter provision, the county, acting under a conditional sanitary landfill construction and operation permit issued by the Department in November 1978, continued to develop plans for the operation of a sanitary landfill at the Laytonsville site. Pursuant to state law and directives issued by the Department, Montgomery County submitted the requisite final permit applications for operation of the new sanitary landfill. In May 1979, the Department issued a final permit authorizing the county to establish and operate a sanitary landfill disposal system at the Laytonsville site. Thereafter on June 3, 1981, Charles R. Buck, Jr., then Secretary of Health and Mental Hygiene, ordered Montgomery County to begin landfill operations at

2. The governing body of each county is required to adopt and submit to the Department such ten-year plans under Code (1982), § 9-501 through § 9-517 of the Health-Environmental Article.

the Laytonsville landfill site within one year from the date of the order.

This case began in the Circuit Court for Montgomery County in January 1981. It was instituted by several Montgomery County taxpayers and a former member of the Maryland House of Delegates. The ultimate defendants were a number of Montgomery County officials and the county itself. The plaintiffs requested a declaratory judgment that § 311A of the county charter was valid and that the defendants had violated that section. In addition, the plaintiffs sought a writ of mandamus and injunctive relief to require the defendants to comply with § 311A. Finally the plaintiffs sought damages from the county and the county officials.

The defendants subsequently filed a "counterclaim" seeking a declaratory judgment that § 311A was invalid, and they also moved for "a separate trial on the issue of law created by the counterclaim." The motion for a separate trial was granted by the circuit court. In July 1981, the trial court filed a declaratory judgment, solely on the defendants' counterclaim, declaring that § 311A was invalid under Art. XI-A of the Maryland Constitution. The trial court further declared that § 311A was an invalid public local law because it conflicted with a public general law, the Regional District Act, Code (1957, 1978 Repl. Vol.), Art. 66 D, § 1-101 *et seq.*

The plaintiffs appealed to the Court of Special Appeals and, prior to any proceedings in that court, we granted the plaintiffs' petition for a writ of certiorari. We were required to dismiss the appeal, however, under Maryland Rule 605 a. *East v. Gilchrist,* 293 Md. 453, 445 A.2d 343 (1982).

After the dismissal of the appeal, further proceedings were held in the Circuit Court for Montgomery County. Following the defendants' motion for summary judgment, the circuit court on June 9, 1982, filed a declaratory judgment, again declaring § 311A to be invalid under Art. XI-A of the Maryland Constitution and the Regional District Act. The plaintiffs' requests for other relief were also denied by the trial court.

The plaintiffs then took an appeal to the Court of Special

Appeals, and, again prior to any proceedings in that court, we granted the defendants' petition for a writ of certiorari. On this occasion, we are satisfied that the case is properly before us.

In taking the position that § 311A of the Montgomery County Charter is invalid under Art. XI-A of the Maryland Constitution, the defendants argue, and the trial court held, that § 311A is not proper charter material under Art. XI-A, as construed in *Cheeks v. Cedlair Corp.*, 287 Md. 595, 415 A.2d 255 (1980). They contend that § 311A constitutes the type of legislation which, under Art. XI-A, is the prerogative of the Montgomery County Council to enact. The plaintiffs, on the other hand, insist that § 311A represents the type of limitation upon government authority to make expenditures which is appropriate for a county charter under Art. XI-A.

The theory underlying the defendants' alternate argument, namely that § 311A of the Montgomery County Charter conflicts with the Regional District Act, is that § 311A constitutes a zoning law, and that, under the Regional District Act, the power and authority regarding zoning and planning is vested exclusively in the Montgomery County Planning Board, the District Council, and the Board of Appeals. The plaintiffs, however, point out that § 311A does not change any zoning ordinance, that it does not prohibit a sanitary landfill in a residential zone, and that it is solely a restriction upon the expenditure of county funds. Consequently, the plaintiffs argue, there is no conflict between § 311A and the Regional District Act.

At oral argument, this Court *sua sponte* raised a third issue relating to the general validity of § 311A. The question asked was whether the authority of a county to enact a provision such as § 311A had been entirely preempted by the body of state law relating to environmental health and particularly to solid waste disposal.

The three issues set forth above concern the facial validity of § 311A. In our view, however, none of these three issues need be resolved at this time because the instant case can and should be disposed of on a narrower ground. Regardless of whether § 311A is generally valid, the charter amend-

ment cannot be given effect under the circumstances of this case.

It is important to keep in mind, as the plaintiffs have repeatedly pointed out, that § 311A of the Montgomery County Charter does not regulate the site selection for sanitary landfills, does not prohibit sanitary landfills in residentially zoned areas, and does not prohibit the county's operation of a landfill in a residential area if county funds are not used. Under § 311A, landfills may be constructed and operated in residential zones as long as the funding comes from private sources or the state government or the federal government. Section 311A merely prohibits the expenditure of *county* funds for the operation of a landfill on residentially zoned property.

Sections 9-201 through 9-228 of the Health-Environmental Article of the Maryland Code provide for the regulation by the Secretary of, *inter alia,* solid waste disposal systems. Section 9-209 (b) specifically authorizes the Secretary to issue an "order" to "[r]equire that a public system of . . . refuse disposal be installed and put into operation" in a particular county if he finds conditions dangerous to health. Section 9-214 then provides in pertinent part as follows (emphasis added):

"§ 9-214. Funds to comply with order of Secretary.

(a) *In general.* — The State, *or any county,* legally constituted public water, sewerage, or sanitary district, or any municipality served with an order of the Secretary, through its proper official or department, *shall proceed to raise such funds as may be necessary to comply with the order* within the time specified."

Consequently, as a matter of state law, when a valid order has been issued by the Secretary to a county to construct and operate a sanitary landfill, the county is required to provide the necessary funds.

As previously mentioned, on June 3, 1981, the Secretary ordered Montgomery County to begin operation of sanitary

landfill disposal facilities at the Laytonsville site. This order followed a prior emergency health order issued by the Secretary and a permit issued by the Department for construction and operation of a sanitary landfill at the Laytonsville site. In light of this action, and § 9-214 of the Health-Environmental Article of the Maryland Code, Montgomery County and its officials had no option but to expend the funds needed to operate the sanitary landfill at the Laytonsville site.

Under Art. XI-A, § 1, of the Maryland Constitution, when a provision in a county charter conflicts with any public general law, the public general law prevails. *See, Hope v. Baltimore County,* 288 Md. 656, 662, 421 A.2d 576 (1980); *City of Baltimore v. Fid. & Dep. Co.,* 282 Md. 431, 443, 386 A.2d 749 (1978); *Wilson v. Bd. of Sup. of Elections,* 273 Md. 296, 301, 328 A.2d 305 (1974); *Barranca v. Prince George's Co.,* 264 Md. 562, 568, 287 A.2d 286 (1972); *Montgomery County v. Yost,* 223 Md. 150, 156, 162 A.2d 462 (1960).

Therefore, in the circumstances of this case, involving an order of the Secretary and the requirement of local funding under a public general law, § 311A of the Montgomery County Charter cannot be given effect. Whether § 311A is otherwise valid, or can be validly applied where there is no such order by the Secretary, are matters which we do not reach in this case.

In light of our holding, the circuit court correctly denied the plaintiffs' requests for relief. Nevertheless, we shall vacate the declaratory judgment and remand the case for the entry of a declaration in conformance with this opinion.

> *Judgment of the Circuit Court for Montgomery County affirmed in part and vacated in part, and case remanded to that Court for the entry of a declaratory judgment in conformance with this opinion. Plaintiffs to pay costs.*