466 A.2d 538

**Richard ROWE et al.**

v.

**The CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARYLAND et al.**

**No. 1871, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Oct. 13, 1983.

Robin Ficker, Bethesda, for appellants.

James P. Garland, Baltimore, with whom were Bruce E. Alexander, Semmes, Bowen & Semmes, J. William Sarver and Robert J. Hallock, Baltimore, on brief, for appellees.

Argued before LISS, ADKINS and GETTY, JJ.

LISS, Judge.

On November 24, 1982, the Chesapeake and Potomac Telephone Company, appellee herein, filed a suit naming

Montgomery County, its County Executive, its Chief Administrative Officer and its Director of Finance as respondents. In its suit the appellee sought a declaratory judgment declaring that Section 313 A of the Montgomery County Charter, as amended and adopted in the general election in 1982, was unconstitutional, illegal and null and void. The appellee further sought a permanent injunction to restrain Montgomery County and its officials from adopting, implementing or enforcing Section 313 A as amended.

The Chesapeake and Potomac Telephone Company also prayed for preliminary injunction naming the same respondents and requesting the same injunctive relief until the underlying petition for declaratory judgment had been heard and decided on its merits. Each of the respondents in the underlying suit consented to the issuance of the interlocutory injunction and is not a party to this appeal.

Section 313 A as approved by a majority of the voters at the election in November of 1982 provided as follows:

The County Government may not purchase and contract for goods and services with The C & P Telephone Company (C & P) unless C & P includes telephone subscribers in Gaithersburg, Maryland and Montgomery Village in the Washington Metropolitan Area Telephone Exchange (MET) at local rates no higher than local rates charged MET subscribers in Bethesda, Silver Spring, Kensington and Rockville telephone exchange areas.

On December 6, 1982, Richard Rowe and Chester Roy Julian, individual taxpayers and residents respectively of Gaithersburg and Montgomery Village, both located in Montgomery County, together with Delegate Robin Ficker, a member of the Maryland Legislature, filed a motion to intervene as respondents in both the underlying case and in the case involving the petition for interlocutory injunction. After a hearing the presiding judge granted Rowe and Julian permission to intervene but denied permission to Ficker on the basis of a lack of standing. No issue has been raised in this appeal as to the correctness of the order denying Ficker the right to intervene.

A hearing was held on the issue of the petition for preliminary injunction, memoranda were filed, and counsel were heard. At the conclusion of the hearing the presiding judge made findings of fact and granted the prayer for preliminary injunction as permitted by Maryland Rule BB 70. c.

The court made the following findings:

1. The Complainant has standing to bring this action and this Court has jurisdiction of the subject matter of the controversy and of the persons of the Respondents.

2. Complainant will suffer serious immediate irreparable injury if the adoption, implementation, enforcement or other carrying out of the provisions of Proposed Amended Section 313 A of the Montgomery County Charter is not enjoined pending determination of this matter on the merits, and, as to such injury Complainant has no adequate remedy at law.

3. The damage to Complainant will be greater if injunctive relief is not granted *pendente lite* than would be any conceivable damage to Respondents if such relief is not granted.

4. There is a likelihood that Complainant will prevail on the merits of its allegations that Proposed Amended Section 313 A is unconstitutional and illegal.

The intervenor/appellants have filed an answer to the bill of complaint but have not moved the circuit court to modify or dissolve the interlocutory injunction as permitted by Maryland Rule BB 79. Rowe and Julian, as appellants, have appealed the granting of the interlocutory injunction.

They raise the following questions to be determined by this appeal:

I. Was the circuit court clearly erroneous in finding

(a) the "balance of convenience" favored granting the injunction; or

(b) the appellee would suffer irreparable injury if the injunction were not granted; or

(c) the appellee is likely to succeed on the merits?

II. Whether the circuit court properly exercised its discretion in granting the preliminary injunction?

### I. (a)

This controversy had its roots in a proceeding before the Public Service Commission of Maryland. Robin Ficker, counsel for the appellants, had appeared before the Commission representing a number of his constituents with a petition requesting that a portion of the Gaithersburg telephone exchange be transferred to the Rockville zone of the Washington Metropolitan Exchange area (hereafter MET). If the transfer had been approved, the affected customers would thereafter have been permitted to make toll-free calls to all zones in MET without the payment of a surcharge. The Commission, after a hearing, concluded the requested transfer was neither necessary nor warranted and issued its order as follows:

> We note that approval of such a charge would increase the revenue burden on the Company's customers statewide by approximately $3,000,000, and in balancing the competing interests involved, we conclude that the requested transfer of part of the Gaithersburg exchange should not be accepted at this proceeding.
>
> [Public Service Commission Order No. 65714, Case No. 7591 at 73 (March 14, 1982)].

Appellants concede that Article 78 of the Maryland Code (1957, 1980 Repl.Vol.) provides the "comprehensive and detailed administrative machinery for the regulation of public utilities throughout the State," including telephone companies. *See Spintman v. C & P Telephone Company,* 254 Md. 423, 255 A.2d 304 (1969). The statutory scheme established by Article 78, § 68 authorizes the Public Service Commission of Maryland to establish rates for public service companies and prohibits companies from giving unreasonable preferences or discriminating against localities with respect to services rendered. *See* Maryland Code, Article 78, § 26. It is admitted by appellants that a charter county, whether by ordinance or charter amendment, may not interfere with

this statutory scheme or require a telephone company to offer particular service or rates to a locality within °its borders. *Cf., City of Crisfield v. Chesapeake & Potomac Tel. Co. of Baltimore City,* 131 Md. 444, 102 A. 751 (1917). In spite of these admissions and concessions, however, the appellants did not appeal the order of the Commission issued on March 14, 1982. Appellants had simultaneously, with their petition to the Public Service Commission, begun a petition drive to place Charter Amendment 313 A on the ballot for submission to the voters at the next election and were successful in obtaining the necessary number of signatures of registered voters. In what they obviously regard as a triumph of the democratic process over recalcitrant bureaucrats, the proposed amendment received 55% of the votes cast and the amendment to Montgomery County's charter was approved.

Appellants ingenuously concede in their brief that the obvious intent of the measure is to influence or induce the telephone company to offer MET rates and services to the Gaithersburg area.

■ Appellants argue that the trial court erred in granting the preliminary injunction in this case and in finding that the "balance of convenience" favored the granting of the injunction. Appellants concede that the granting of a preliminary injunction is a matter resting in the sound discretion of the court.

The Court of Appeals, in *State Department of Health and Mental Hygiene v. Baltimore County,* 281 Md. 548, 554, 383 A.2d 51 (1977), mentioned the "balance of convenience" doctrine without explicating the elements of the test to be applied. However, the United States Court of Appeals for the 4th Circuit noted in *Federal Leasing, Inc. v. Underwriters at Lloyds,* 650 F.2d 495, 499 n. 4 (1981), that the test under Maryland and Federal law is essentially the same, *i.e.,* the benefits to the plaintiff must be equal to or outweigh the potential harm which the defendant may incur if the injunction is granted.

The trial judge had before her at the time she granted the preliminary injunction information from which she could have concluded that if Section 313 A were implemented, essential communication services to and from police, fire, ambulance, water, sanitation and other vital county services would have been required to be terminated or in the alternative the Chesapeake and Potomac Telephone Company would have been required to adopt a rate structure implicitly prohibited by the Public Service Commission, the regulatory body vested with the sole authority to determine its rates. The effect on both emergency and non-emergency service of the County government would have been chaotic. It is not surprising, therefore, that the responsible officials of the County not only did not object to the issuance of the preliminary injunction but actually consented to its entry. Weighed on the scales with the benefits of Section 313 A to the ratepayers in Gaithersburg, it is obvious to us that the circuit court was not clearly erroneous when it issued its preliminary injunction before the case had been heard on its merits. Appellants argue that the "balance of convenience" should be weighted in their favor because the issuance of the preliminary injunction has resulted in the Gaithersburg and Montgomery Village ratepayers being required to pay approximately eleven dollars a month in surcharges because of the refusal of the appellee to include these areas in the MET area.

It seems clear to us that the trial court had before it at the time it considered the request for a preliminary injunction what could be considered an attempt to regulate utility rates by economic pressure in a manner contrary to law. The court was also entitled to consider that even if the amended section were permitted to go into immediate effect, there was no guarantee that any change would have automatically occurred in the rates charged Gaithersburg and Montgomery Village Telephone subscribers. Any such change could have been accomplished only by appropriate action before, and approved by the Public Service Commission after, its consideration of the effect of the proposed

change on other telephone charges throughout the system. We find no error in the trial court's conclusion as to the "balance of convenience" in the issuance of the preliminary injunction.

## I. (b)

■ Appellants contend that the trial court was clearly erroneous when it concluded that the appellee would suffer irreparable injury if the preliminary injunction were not granted. We do not agree. If the implementation of the charter amendment were not enjoined *pendente lite,* it would have required the County government, immediately upon its effective date, to cease purchasing and contracting for appellee's telephone services. This would have required the cessation of all telephone services in the County from the appellee with the result we have already explicated in this opinion. The property, life, and safety of the citizens of Montgomery County and its employees would have been placed at risk. Appellant argues that this chaos could be avoided by appellee's capitulating and making the change desired in the charges for MET service to Gaithersburg and Montgomery Village subscribers. Any such unilateral action, however, on the part of the appellee, would be clearly illegal, particularly in light of the refusal of the Public Service Commission to grant the relief requested after a hearing and full consideration by the Commission.

The Court of Appeals, in explicating the standard by which irreparable damage is to be measured, stated in *Maryland-National Capital Park and Planning Commission v. Washington National Arena,* 282 Md. 588, 615–16, 386 A.2d 1216 (1978):

> Such injury, however, need not be beyond all possibility of compensation in damages, nor need it be very great. [Citations omitted]. Thus, it has been held that irreparable injury is suffered whenever monetary damages are difficult to ascertain or are otherwise inadequate. [Citations omitted].

*See, also, State v. Ficker,* 266 Md. 500, 295 A.2d 231 (1972).

We hold that the trial court was correct in concluding that the appellee had no adequate remedy at law and would suffer irreparable injury if the preliminary injunction had not been granted.

## I.  (c)

■ Appellants argue in their brief that the trial court "abused its discretion" in concluding that it was in the public interest to grant the injunction. The sole question of public interest reached in this proceeding is whether the public was better served by enjoining the operation of the proposed amendment against which a substantial challenge as to its constitutionality had been raised, or in the alternative to permit the amendment, notwithstanding its potential invalidity, to take immediate effect regardless of its disruptive consequences. In the latter instance, if the decision on the merits of the case was that the charter amendment was unconstitutional, the County's services to its citizens would have been seriously and unnecessarily impaired by reason of a law which was found to be void *ab initio*. If, on the other hand, the amendment was determined to be constitutional, the public interest would suffer no measurable damage by the delay in implementation. That this is correct is evident from the admissions made by counsel for the appellants in their brief where they state "[T]he obvious intent of the measure [the charter amendment] is to influence the telephone company to offer D.C. Metropolitan Exchange rates and services to telephone users in Gaithersburg _ _ _ [and] the amendment would not direct the utility to do anything."

Further, appellants concede that the rights of citizens to amend their county charters are conditioned upon an amendment's not violating or conflicting with the State or Federal Constitution or public general law or the Express Powers Act [Maryland Code (1957, 1973 Repl.Vol.) Article 25 A], adopted by the Maryland Legislature. Under all the circumstances, we find appellant's public interest argument not supported by the law or the facts in this case.

## II.

■ The final issue in appellants' initial brief is whether the trial court's determination when it issued its preliminary injunction as to appellee's likelihood of success on the merits was clearly erroneous and therefore an abuse of discretion. The issue here is not to be considered as a substitute for the ultimate determination by the trial court after a full legal and evidentiary hearing on the merits of the case.

Appellants rely heavily on *Wilson v. Board of Supervisors of Elections of Baltimore City,* 273 Md. 296, 328 A.2d 305 (1974), in which the Court of Appeals held that a proposed city charter amendment prohibiting the use of public funds to build a sports stadium in Baltimore was not in conflict with a public general law. It is to be noted, however, that in *Wilson* the Court did not have before it the issue of the proposed amendment's conflict with the constitutional limitations of home rule jurisdiction under Article XI A of the Maryland Constitution (The Home Rule Amendment).

Appellee urges that *Cheeks v. Cedlair Corp.,* 287 Md. 595, 415 A.2d 255 (1980) is dispositive of the issue. In that case, the Court of Appeals held that voters in Baltimore City could not enact a rent control law by direct initiative and plebiscite in the form of a charter amendment. The Court held there is no right of legislative initiative in Maryland home rule jurisdictions and that the right of initiative is constitutionally limited to charter amendments. Even as to proposed charter amendments, the initiative can be exercised only in cases involving actual charter material, *i.e.,* matter which amends the form or structure of local government. *Id.,* at 606–14, 415 A.2d 255. The Court held that the electorate under the Maryland Constitution is simply not permitted to exercise the police or general welfare powers of the local government. The Court expressly held that the exercise of the legislative initiative power is in direct conflict with Sections 2, 3 and 6 of Article XI A, which apply to all home rule entities. *See Electorate's Exercise of Police Powers in Charter Amendment Form Violates Home Rule*

*Amendment of State Constitution,* 11 U.Balt.Law Rev. 158, 170–72 (1982).

■ Further, it is argued that the proposed Section 313 A is a violation of the Montgomery County Charter which by Section 101 vests all legislative powers in the County Council. This, however, is an issue to be determined at the hearing on the merits.

Appellee contends that Section 313 A is unconstitutional because it represents an attempt to enact a special law governing a subject already addressed by general law of the State.

The Maryland Constitution states: "[T]he General Assembly shall pass no special Law, for any case, for which provision has been made, by an existing General Law." Md. Const. Art. III, § 33. Appellee urges that the provisions of Article III, § 33 are similarly binding upon charter counties because their powers are not inherent but are derivative from the General Assembly and are limited by Article XI A of the Maryland Constitution and Maryland Code, Article 25 A. However, the appellee cites no authority for the existence of such an extension of this principle, and we decline to address it at this time.

*Wilson v. Board of Supervisors of Elections, supra,* 273 Md. at 301, 328 A.2d 305, clearly states that "[a]ny conflict between a county or city charter and a public general law must be resolved in favor of the public general law. [Footnote omitted] Maryland Constitution, Art. XI–A, §§ 1 and 3; and *Montgomery County v. Yost,* 223 Md. 150, 156, 162 A.2d 462 (1960). *See also, Northampton Corporation v. Prince George's County, Maryland,* 273 Md. 93, 327 A.2d 774 (1974)."

■ A public general law "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Steimel v. Board of Election Supervisors of Prince George's County,* 278 Md. 1, 5, 357 A.2d 386 (1976), quoting *Cole v. Secretary of State,*

249 Md. 425, 435, 240 A.2d 272 (1980); *see also,* Md. Const. Art. XI A, § 4. The laws governing the Public Service Commission and its regulatory control over the appellee are clearly public general laws. *See* Maryland Code, Article 78, §§ 1 and 56; *The Mayor of Crisfield v. The Chesapeake and Potomac Telephone Co., supra.* The type of service which appellee offers and the rates which it charges affect every part of the State. *Spintman v. C & P Telephone Company, supra; Stillman & Dolan, Inc. v. The Chesapeake & Potomac Telephone Company of Maryland,* 30 Md.App. 179, 351 A.2d 172 (1976).

■ Whether a conflict exists between article 78 of the Maryland code, which regulates public service entities in the State of Maryland, and Section 313 A of the Montgomery County Charter, as adopted, is a matter which must be resolved at a hearing on the merits of this controversy.

■ Appellants filed a reply brief in this Court on August 31, 1983, in which they raised ten issues, none of which were raised or decided in the proceedings below. On the basis of Rule 1085 we shall decline to consider these issues.

One issue, however, raised by the reply brief goes to the question of the jurisdiction of the trial court and we are required to consider this issue even though it was not raised or decided below. Appellants rely on *Reyes v. Prince George's County,* 281 Md. 279, 380 A.2d 12 (1977). They contend that there was no adverse or justiciable issue between the original parties to this proceeding and therefore the Circuit Court lacked jurisdiction in the declaratory judgment and injunctive actions. Our examination of the facts in *Reyes* convinces us that they are clearly distinguishable from the case at bar. In *Reyes,* the Court of Appeals had before it an action challenging a statute authorizing a bond sale. The purpose of the action was to obtain a decision upholding the validity of the statute in order to encourage a life insurance company to purchase the bonds. The Court held that in view of its finding that counsel fees for both parties were paid by the private-party defendant the action

could be considered to be collusive and not truly adverse. The Court held, however, that it was not bound by either the Federal or State Constitutions to dismiss a collusive action. There is no suggestion in this case that either party is paying the legal fees or expenses of the other party to the case.

■ The court below has not yet been called upon in this case to decide on the merits whether this controversy involves a justiciable issue. Such an issue is a prerequisite to the adjudication of any action under Maryland Code (1974, 1980 Repl.Vol.) Courts & Judicial Proceedings Article, §§ 3–401 through 3–415. As Judge Digges noted in footnote 4 in *Reyes, supra,* at p. 288, 380 A.2d 12, "there is no requirement that adverse parties to a suit actually disagree or desire contrary results," [citations omitted]. In the present status of the proceedings the only action of the respondents which suggests that they would not or could not adequately participate in a full and fair presentation of the issues to the presiding judge below is the consent to the interlocutory injunction filed by the respondents. In the light of the effect the implementation of Section 313 A would have upon the orderly operation of the governmental processes in Montgomery County, we do not consider that the respondents were acting in collusion with the appellant. In any case any complaint which might have been made concerning the lack of a justiciable issue has been cured by the permission granted to the appellants to intervene in this case. It is obvious that there are now before the court parties who sharply disagree on the constitutionality and effect of Section 313 A and who desire a declaratory judgment as to its validity.

We shall not express an opinion at this time whether Section 313 A is or is not unconstitutional. That decision must abide a full evidentiary hearing and a consideration of the legal principles governing this dispute to be determined by a hearing on the merits. It seems clear to us, however, that there was at least a substantial likelihood that appellee might prevail at a hearing on the merits and in view of that

conclusion and the others we have mentioned in our consideration of this appeal we find that the trial court's decision to grant the preliminary injunction in this case was not clearly erroneous nor was its action arbitrary or capricious.

MOTION TO DISMISS DENIED.

ORDER AFFIRMED; COSTS TO BE PAID BY APPELLANTS.