501 A.2d 464

**Richard ROWE, et al.**

v.

**CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARYLAND, et al.**

**No. 386, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 11, 1985.

Robin Ficker, Bethesda, for appellants.

James P. Garland (Bruce E. Alexander, Semmes, Bowen & Semmes, J. William Sarver and Robert J. Hallock on brief), Baltimore, for appellees.

Argued before WILNER, ADKINS and KARWACKI, JJ.

ADKINS, Judge.

Before us is the validity of § 313A of the Montgomery County Charter. That section provides:

> The county government may not purchase and contract for goods and services with the C & P Telephone Company (C & P) unless C & P includes telephone subscribers in

Gaithersburg, Maryland, and Montgomery Village in the Washington Metropolitan Telephone Exchange (MET) at local rates no higher than local rates charged MET subscribers in Bethesda, Silver Spring, Kensington and Rockville telephone exchange areas.

The Circuit Court for Montgomery County (Cave, J.), relying on *Cheeks v. Cedlair Corp.*, 287 Md. 595, 415 A.2d 255 (1980), reasoned that the amendment did not "affect the formal structure of the Montgomery County Government" and that it was "an effort to intrude into the administration of the affairs of Montgomery County Government specifically delegated to the County Council or the County Executive." Judge Cave declared the section to be unconstitutional and enjoined the County from implementing it. Appellants Richard Rowe and Chester Julian take strenuous issue with that judgment. Appellee The Chesapeake and Potomac Telephone Company of Maryland (C & P) urges us to affirm the judgment on the basis stated by Judge Cave as well as for numerous other reasons.

The seed from which this controversy grew seems to have been the desire of certain residents in the Gaithersburg-Montgomery Village sections of Montgomery County to be able to call toll-free all areas in the Washington Metropolitan Exchange area (MET). In 1981 they initiated a petition drive to place on the ballot the charter amendment now before us. Their efforts were, no doubt, renewed when, in March 1982, the Public Service Commission of Maryland rejected a request that a portion of the Gaithersburg telephone exchange be transferred to the Rockville zone of MET—an action that would have accomplished the desired result. The petition drive was successful; Section 313A was placed on the ballot and adopted by the voters at the 1982 general election.

C & P promptly sued Montgomery County and several of its officials, seeking a declaration that § 313A was unconstitutional and preliminary and permanent injunctions against its implementation. Although the County consented to the issuance of a preliminary injunction, appellants Rowe and

Julian were permitted to intervene in the action and ardently opposed C & P's request. Nevertheless, a preliminary injunction issued and we affirmed that order. *Rowe v. Chesapeake and Potomac Telephone Co.*, 56 Md.App. 23, 466 A.2d 538 (1983). Our basic holding in that case was "that the trial court's decision to grant the preliminary injunction ... was not clearly erroneous nor was its action arbitrary or capricious." 56 Md.App. at 38, 466 A.2d 538. We expressed no opinion "whether Section 313A is or is not unconstitutional." *Id.* at 37, 466 A.2d 538. When the case returned to the circuit court Judge Cave, despite the continuing opposition of appellants, reached the decision we have recounted. Appellants persist in their efforts to resuscitate the provision and now argue that:

    1. The circuit court erred in deciding that there was a controversy between Montgomery County and C & P; and

    2. The circuit court erroneously concluded that § 313A is not "charter material."

### *Actual Controversy*

■ The action filed by C & P sought, among other things, a declaratory judgment. Declaratory relief may be granted if the "judgment ... will serve to terminate the ... controversy giving rise to the proceeding, and if ... [a]n actual controversy exists between contending parties...." Courts and Judicial Proceedings, Art. § 3–409(a)(1). If, on the other hand, there is no actual dispute between the parties, declaratory judgment is not an appropriate remedy. *Hatt v. Anderson*, 297 Md. 42, 464 A.2d 1076 (1983).

■ Appellants assert that because Montgomery County did not contest the action, there was no controversy—no justiciable issue. Had the County and its officials been the only defendants, there might be some force to this argument, *but see* note 1, *infra*. *See Harford County v. Schultz*, 280 Md. 77, 371 A.2d 428 (1977) (when county attacks validity of provision of its own charter and nominal

defendant takes no position on the issue, no justiciable controversy). But they were not. Appellants were in the case as defendants as well, and they forcefully supported constitutionality of the charter amendment against C & P's opposing claims. All that the Declaratory Judgment Act requires is that there be a genuine controversy between some opposing parties, and that certainly existed—and still exists—here.

*State v. Burning Tree Club, Inc.*, 301 Md. 9, 481 A.2d 785 (1984), heavily relied on by appellants, does not demand or even suggest a contrary result. That case held that the Attorney General ordinarily does not have standing to attack the constitutionality of a State statute. It dealt with standing, not with the existence of a justiciable controversy. Moreover, it dealt with the limited authority of the Attorney General under Maryland's Constitution. Whether a county executive and a county attorney are subject to similar limitations with respect to a county charter may be debated, but we need not decide that question, nor the question of whether it makes a difference that the County was a defendant, not a plaintiff here. *See East v. Gilchrist,* 296 Md. 368, 463 A.2d 285 (1983), in which Montgomery County, as a defendant in a declaratory judgment action, questioned the validity of another charter amendment.

The issue before us is not the propriety of the County's failure to defend the charter amendment but whether there was and is an actual controversy between adverse parties.[1] In our first *Rowe* we said:

> In any case any complaint which might have been made concerning the lack of a justiciable issue has been cured by the permission granted to appellants to intervene in this case. It is obvious that there are now before the

---

**1.** We note that in the context of a declaratory judgment action "[t]here is no requirement that adverse parties to a suit actually disagree or desire contrary results." It is enough that "there are technical adverse interest" and that the court be satisfied that "full and fair presentation [will be] made...." *Reyes v. Prince George's County,* 281 Md. 279, 288 n. 4, 380 A.2d 12 (1977).

court parties who sharply disagree on the constitutionality and effect of Section 313 A and who desire a declaratory judgment as to its validity. 56 Md.App. at 37, 466 A.2d 538.

We are still of the same view. The trial court did not err when it held "the existence of the intervenors [appellants] clearly establishes the existence of a justiciable controversy...." .

## The Charter Amendment

■ As we have said, Judge Cave thought § 313A was unconstitutional because it was not charter material. He may well have been right, but that is a point we need not decide. We address the matter on a narrower basis, as did the Court of Appeals in *East,* and hold that § 313A cannot be given effect because it is in conflict with a public general law.

The Montgomery County Charter was adopted pursuant to Art. XI–A of the Maryland Constitution. It is settled that any conflict between such a charter "and a public general law must be resolved in favor of the public general law." *Wilson v. Board of Supervisors of Elections,* 273 Md. 296, 301, 328 A.2d 305 (1974) [footnote and citations omitted]. C & P is a public service telephone company as defined by Code, Art. 78, § 2(z). As such, it may render services and charge rates only as authorized by the Public Service Commission. Art. 78, § 27. Preferential or discriminatory rates are expressly prohibited by § 26 and it is for the Public Service Commission to determine, in the first instance, questions as to preferential or discriminatory rates. *See Stillman & Dolan v. Chesapeake and Potomac Telephone Co.,* 30 Md.App. 179, 351 A.2d 172 (1976).

Art. 78 is a public general law. It provides "comprehensive and detailed administrative machinery for the regulation of public utilities throughout the State." *Spintman v. Chesapeake and Potomac Telephone Co.,* 254 Md. 423, 427, 255 A.2d 304 (1969). Section 313A of the Montgomery County Charter, it is true, does not purport to regulate C &

P's rates directly; it does not order C & P to change its rates; it does not order the Public Service Commission to authorize particular tariffs. In this respect, the case before us is different from *East v. Gilchrist, supra,* in which the Court of Appeals held a Montgomery County charter amendment ineffective because in conflict with a public general law. In *East,* the charter amendment prohibited the County from expending funds for landfill operations on land zoned for residential use. The County was subject to an order of the Secretary of Mental Health and Hygiene to select and operate a new landfill site. By virtue of that order, § 9–214(a) of the Health-Environmental Art. required the County to provide funds for a landfill when subject to a valid secretarial order. Thus, the County charter's prohibition against the expenditure of public funds was in square conflict with a public general law mandating the expenditure of those funds.

The conflict, as we have noted, is not quite so direct here. Nevertheless, appellants concede what is obvious: that § 313A is intended to force C & P to change the rates and services it offers subscribers in portions of Montgomery County. It seeks to do this in the face of an unappealed Public Service Commission order denying the very relief appellants desire. We need not disregard the plain intent of the amendment. *Cheeks,* 287 Md. at 608, 415 A.2d 255. Its intent can be accomplished only if C & P provides services in violation of the Public Service Commission order or if the Commission is forced to change C & P rates irrespective of the usual factors involved in public utility ratemaking. We are persuaded that § 313A conflicts with the existing Public Service Commission order and with the public general law granting that Commission the sole power to regulate public utility telephone company rates and services in Maryland.

This conclusion does not render § 313A unconstitutional, however. It means only that § 313A cannot be given effect under present circumstances and present law. *East,* 296 Md. at 374, 463 A.2d 285. Consequently, while Judge Cave did not err when he enjoined the County from "implement-

ing or enforcing ... the provisions of ... Sec. 313A ..." we shall, like the Court of Appeals in *East*, "vacate the declaratory judgment [as to unconstitutionality] and remand the case for the entry of a declaration in conformance with this opinion." *Id.*

INJUNCTION AFFIRMED.
DECLARATORY JUDGMENT VACATED
AND CASE REMANDED FOR ENTRY
OF DECLARATORY JUDGMENT IN
CONFORMANCE WITH THIS OPINION.
APPELLANTS TO PAY THE COSTS.